Good morning, Your Honors. May it please the Court, my name is Jay Zollinger. I represent Plaintiff Appellant Robert D. Boydstun, and I would like to reserve three minutes for rebuttal, please. You can watch the clock. I'll try to help you as well. Okay, thank you. I appreciate it. There's really just one question that the Court needs to answer today, and that question is whether an individual consumer who is unable to grow a business because of information that was reported on that consumer's credit report in violation of the Fair Credit Reporting Act is entitled to recover the damages, the actual damages that that consumer can establish and that that consumer suffered. I will recognize, I will begin by recognizing that there is a lot of language in some cases out there that says that if a consumer credit report is used for business purposes, that takes it out of the purview of the Fair Credit Reporting Act. What's missing from those cases, though, the points that I would like to make is that first, none of those cases are Ninth Circuit cases, but more importantly, what's missing from those cases is any analysis that really supports that conclusion. And I think the place that we need to start is in the language of the statute itself. The Fair Credit Reporting Act under, this is 15 U.S.C. section 1681.0, says that any person who violates the Fair Credit Reporting Act is liable to the consumer for any actual damages that that consumer suffers. There's no language in that statute that says unless those damages somehow relate to a business transaction that the consumer conducts. And similarly, in 1681.a, which is where, which is where the consumer credit report itself is defined, there's no language in that statute that says that a consumer credit report that looks and smells and otherwise is a consumer credit report no longer becomes a consumer credit report just because it's used for business purposes. Maybe, you know, I had a hard time sort of following what was going on here. Okay. Because some of the claims have been dismissed, some of the parties have been settled against. Okay. So there was an initial lawsuit against both the credit reporting agencies and U.S. Bank or Alden or whatever the name of it. Correct. I'll just refer to it as U.S. Bank. Correct. And it was all about the U.S. Bank reported him to the credit agencies over a dispute relating to a credit card that was for one of his prior businesses. Correct. Right? They claimed that he was responsible for that credit card debt that when the business was in bankruptcy. Correct. Okay. So they report that. They try to get him to pay for it. He doesn't pay for it. And they alert the credit agency, the credit reporting agency. Correct. Right? Is that what happened? That's the basic what happened. That's basically what happened, yes. He then, when he then tries to get credit on his own name or somehow or other with his new business. Correct. And lo and behold, the black mark on his credit report from a prior business pops up. Correct. Right? Is that right? Yes. And then he complains and the credit reporting agencies alert U.S. Bank and say investigate this. Correct. Right? They investigate it and they say, oh no, it's all, he's responsible. To the extent to which we can say they investigated it is part of the case, but generally correct. So your suit against U.S. Bank is for failing to do an adequate investigation as required under the Fair Debt Collection Practices Act, is that, do I have that right? Yes. And also though for failing to remove the information from his credit report when that investigation, whatever investigation it did do, did not verify the information that was being reported. Okay. But that's essentially your claim though against U.S. Bank. Correct. That it failed to remove the information that it could not verify. Okay. So now it all gets a little bit complicated because the new business. Correct. He tries to, he tries to purchase a forklift. So let me walk through exactly what happened. If I can, Your Honor, let me walk through exactly what happened there. So plaintiff goes in under the name of his new business and attempts to borrow money to purchase a forklift. Under the name of the new business. Under the name of the new business. Correct. The new business is the contracting party. Correct. Now, that application for the business though was denied. And so at that point, the business that was selling the forklift to Mr. Boydston went back to the lender and said, we'd like you to review this one by hand because often when you do that, we find out that you end up approving the credit. The lender asked the business for plaintiff's Social Security number. The business gave the lender plaintiff's Social Security number. The lender then took that Social Security number and went to TransUnion, one of the credit reporting agencies who's now settled in the case, and said, let us know about plaintiff's credit. TransUnion gave that lender plaintiff's standard consumer credit report. The same consumer credit report that someone would receive if plaintiff went down to an auto dealership to buy a car. And then the lender looked at that consumer credit report and noticed this black mark that was on there, this information that U.S. Bank had failed to remove and denied credit based on that. Does that answer your question? Oh, yes. Okay. But the whole, this is, if I'm confusing though, is that the attempt to purchase the forklift is through the business. I mean, it's a separate, this is a legitimate business, correct? Correct. This is a legitimate business. Plaintiff understood as he was building this business from scratch that he would need to rely on his personal credit worthiness as an individual consumer to grow that business the way he had with the initial business that he had grown quite successfully. Which is not uncommon and is almost the same thing that the plaintiff in the case of Dennis v. BH1 wanted to do. He wanted to use his personal credit in order to grow that business. This transaction let plaintiff know that he was not going to be able to do that because of this disputed information that was still on his credit report. Well, this business, though, this business is a separate corporate entity. Correct. This business is an LLC. He's not, you know, going down and trying to open up a coffee shop down the block. That's In his own name. Right. Not personally. Correct. That's right. So he was, but he also knew that even though this business, which is a separate LLC, until that business got big enough to borrow money on its own, that he would need to rely on his personal credit to do that. That was his hope and his desire was to grow that business using his personal credit until it could get to the point where that business could then operate on its own credit. Going back where I think you started, which was the language of the statute. Yes. How does this transaction, which is a business transaction, meet the consumer definitions? Where in the statute do we look to say he falls within it, therefore there's a potential violation? So let me answer that question by, in part, by telling you what the language in some of the cases the defendant relies on says. What that language says is that if the report is used for business purposes, then all of the protections of the Fair Credit Reporting Act go away. Where the definition of a consumer report, though, is found is in 15 U.S.C. 1681a. And what that statute says, it defines what is a consumer credit report. And what it says is that a consumer credit report is any information or a report that is, A, either used or expected to be used for consumer purposes, or, B, it contains information that was collected in whole or in part for the purpose of establishing consumer credit. And so the question then is, the consumer credit report that TransUnion handed this lender based on plaintiff's Social Security number to determine whether it was going to make a loan to the business, is it a consumer credit report? And plaintiff would submit that it absolutely is, because at the time that TransUnion handed that report to the lender, TransUnion had every expectation that it was being used for consumer credit, for consumer purposes, because it was It was really being used for business purposes. But TransUnion didn't know that. There's no evidence anywhere in the record that would suggest that when TransUnion handed that ordinary consumer credit report, the same one it would give to a car dealer or a mortgage lender or anybody else, that it was, that that, that the business that it was handing it to was going to use that for a business transaction rather than a personal transaction. If it wasn't doing this for the purposes of what the consumer credit report is intended for personal Well, and that's a good question. One of the, you know, the basic purposes is it's for your personal benefit, it's for personal matters. And I would submit, Your Honor, that the desire to grow your own business is a personal purpose for using your credit. You're taking, you're expanding the meaning of the purposes of the fair credit reporting way beyond what Well, and I would argue that that's not the case, in part because that's exactly what damages that, that he, that he incurred as a result of not being able to use his personal credit to grow the business. And I would also submit that it's consistent with the, with the plain language which says that if the consumer, if the report is used for personal, family or household purposes, then it's a consumer credit report. The personal desire to grow your own business is a personal purpose, and I don't know why that wouldn't fit within that plain language of the statute. I'm still bothered by the fact that the transaction that we're dealing with was the business trying to buy a forklift. It's not like you have a forklift in your backyard, you know. I completely understood, but again, looking at the definition of what a consumer report is, TransUnion didn't know that it was, that it was, that this consumer credit report was being used to buy a forklift. And the other part of that statute says that if the information was, quote, collected in whole or in part for the purpose of serving as a factor of establishing a consumer's credit, then it's a consumer credit report. There's no question here that U.S. Bank provided this information to TransUnion for this very purpose, that the information, the disputed information that's at issue here was information that was collected for the purpose of establishing consumer credit. Therefore, that information is part of the consumer credit report. That consumer credit report, due to a violation of the Fair Credit Reporting Act, led to actual damages that my client incurred, and it's my client's position that he should be entitled to recover those damages. Do you want to save your remaining time? Yes, let me do that. Thank you. May it please the Court. Cody Hosley for U.S. Bank. Counsel talks about getting to the language of the statute. In that regard, I want to point out that the Dennis and Gorman cases, they don't talk about the language of the statute. This business issue was not briefed. It was not discussed in either of those decisions. Both of those decisions involved true consumer purposes. Both of them involved the plaintiff's residence. In the one instance, it was the plaintiff having to ultimately pay a higher security deposit on their rental residence. In the Gorman case, you can only really get it if you read the briefs in Gorman, but they had to pay a higher mortgage on their residence. So those cases both actually involved consumer damages and a consumer purpose. Dennis also involved this business purpose. He wanted to start his own business, but he did it all in his own name. It was his ability to obtain credit, not a company's. I'll also contrast Dennis with the Fifth Circuit's recent decision, Bacharach, where it was an individual who wanted to buy an investment real estate property, and they couldn't get it because of information on their credit report, their personal credit report, and the Court rejected the claim, saying that's outside FCRA. The credit report was both used and expected to be used for a business purpose. Here that same thing is true as well. This credit report was both used and expected to be used for a business purpose. I think the best I can understand his argument is that at the outset it might have been, but that somehow by the time we got the transfer of requests that it became a little bit attenuated. So the bank or its related entities didn't know that it was for business, and therefore they were using a consumer's report in the consumer context. I think that's what he's saying, that you're kind of getting out here and we don't know about the forklift over here. So could you respond to that?  So there's two separate matters. The U.S. Bank was not involved with this forklift acquisition, attempted forklift acquisition. U.S. Bank was involved with a totally different credit that was a different business, and U.S. Bank had reported the information to the CRAs about that. And then when Miranda Homes, this business, goes and tries to buy a forklift, they go to try to get financing. And this is all in Docket 199, Exhibit C, the Hunsaker Declaration, Exhibit C, is all the stuff related to this attempted acquisition of the forklift. And it shows very clearly it was a business that was applying for the credit, and there was a commercial credit report run on the business. The business had never had any real activity, so it's not good enough to get the credit. And it didn't, the home company just bought the forklift, right, ultimately? It did, ultimately, yeah. Just paid a check and bought the forklift. That's exactly right, yes. And so it was the financing, the company that was attempting to, you know, the people who want to get the money because they want to sell the forklift, they're saying, financer, you know, why don't you try running this by hand? Get his personal credit report, the business owner's. And so they get that, but again, it's all in the context of buying a forklift for Miranda Homes. And to the degree that there's an absence of evidence as to what TransUnion was thinking when it provided that credit report, plaintiff is the plaintiff here, they have the burden of proof. They need to prove that this is a consumer report under FCRA. An absence of evidence goes against them. Moreover, this Court in Mende and the Fifth Circuit recently in Bacharach says it does not matter if the reported issue could have been used for a consumer purpose. You need to show that it was going to be used for a consumer purpose. Here there's only a business purpose at issue. No one was ever – contrast this with Como, this Court's prior decision, where the person pulling the report says, I'm going to be using this for employment purposes, which is a type of consumer purpose. And the CRA provides the report. And then it's ultimately used for a different purpose. And there this Court says, now that's a consumer report because the CRA was expecting it to be used for a consumer purpose. So it's actual or expected use. Here though, both actual and expected use are business uses. And that is why this does not qualify as a consumer report within the text of the statute. And the Ippolito case from the Second Circuit goes on another tack and says, even if the CRA collected this information with the intention that this will be used for consumer purposes, if the, in this case, the bank is not negligent in not knowing that, there's no violation of the CRA either. So under Mende, Bacharach, and Ippolito, even focusing on this collection aspect of the definition of a consumer report, U.S. Bank prevails in this case. This is a really important issue because, as counsel pointed out, new businesses never have enough history to get credit on their own. They always are relying on their owners' personal credit. And so these credit reports are pulled all the time throughout the country every single day. And if this is always a consumer report every single time, then the only way that this can be proper is if the owner gives written consent to the use of their credit report every single time. That's not required when you go to try to buy a TV or any other consumer good, but it would be required all of a sudden every time a business owner wants to buy equipment for their business. And again, a ruling in plaintiff's favor here would create a circuit split with the Bacharach case in particular, but also the Seventh and Eighth Circuits. So if he had complained, if his claim for damages was that Mr. Boydston was denied employment because of his black mark— I'm sorry, he was denied what? Employment. Some sort of employment opportunity. Here? No, I'm just saying if. Uh-huh. Hypothetically speaking. If it had been about he had been denied employment, and then because of the black, when the new employer runs a credit report and finds this black mark, oh, we're not going to hire you because you've got a terrible credit report. He could sue, he could maintain his claim against you as bank, and damages related to that would still be proper. If I understand the hypothetical correctly, if he was applying for a job and a credit report is pulled as part of that, and he's denied the employment because of that, and he loses wages, as in Gorman, one of the allegations of damage, lost wages, that's consumer damages, and that would be a consumer report because employment is a type of sort of consumer purpose. But here you have—and there's two—this business versus consumer dichotomy comes in in two places. One is in the definition of a consumer report, and that is 1681 sub D. But the other and equally important place this business consumer dichotomy comes into play is in section 1681 in and O, because they talk about how you need to prove actual damage sustained by a consumer. They don't just say sustained by an individual, and I know consumer is defined B, an individual, but this is a consumer statute. The legislative history is very clear. They didn't want to provide any benefit for businesses or business purposes or business damages. They wanted to protect consumers. And so when you have, as a separate matter, regardless of whether it was a consumer report or not, if you have business damages, and here the damages are, I had to loan money to my business, that is not damage sustained in a consumer capacity. Lost wages is a different matter, but lost business profits or out-of-pocket to fund my business, that's not consumer damages under the statute. So that's a separate basis where this dichotomy comes into play, and it's equally important. I also want to point out just briefly, the Matthews case from the Eighth Circuit, the Thompson case that we've cited, if this is not a consumer report or if these are non-recoverable business damages, then of course evidence relating to the damages can be stricken from the case, and that's exactly what happened here. So the evidentiary, although this comes up in a sort of unusual posture, the evidentiary ruling is proper if the underlying rationale is correct, and it is in this case. Unless the Court has any further questions, I have nothing else to say. Thank you. Thank you very much. We have some rebuttal time. Thank you, Your Honors. Let me begin by just addressing a few points that counsel for the bank made. First, he says, he tries to draw a distinction between lost wages and lost profits, and I would direct the Court's attention to the Gorman case in which this circuit held that an attorney could recover the lost wages that he had suffered because he was spending time clearing up an issue on his consumer report. If the Court reads that decision, it's very clear in there that that attorney had his own law firm, and so that attorney billed his time through that law firm, and his lost wages are essentially the same thing as the lost profits of that law firm. There was no reason for the circuit court in that Gorman case to look at the language of the Fair Credit Reporting Act and say he can't recover those because, in fact, it was run through the business, and that's the problem that I have with the interpretations of the Fair Credit Reporting Act that are being proffered here. Looking at the Bacharach case, for example, for the Fifth Circuit, the denial of credit in that case, that was at issue in that case, was that the plaintiff wanted to get credit to buy the house that abutted her house, so it was essentially the house right next door. There the Court concluded that the plaintiff could not recover for those damages because her intention was to buy that house to rent it out to make business income, and therefore the Fifth Circuit in that case concluded that it was a business purpose that wasn't protected by the Fair Credit Reporting Act. But under that same logic, if plaintiff went down to the Porsche dealer to buy a Porsche and was denied credit because of a violation of the Fair Credit Reporting Act, the Court would then need to analyze whether the plaintiff was buying that car because she liked Porsches or because she thought that it might appreciate at some point in time, which would then turn it into somehow a business purpose and automatically create a shield for anyone who had violated the Fair Credit Reporting Act and led to that denial of credit. Another point that I'd like to address quickly, Your Honor, is that Judge McEwen, you made it clear that what happened after plaintiff's credit report was denied, was used to deny credit to him to buy this tractor, the business bought the tractor. In fact, what happened is that plaintiff personally had to lend money to the business for that business to go buy the tractor. And that loan was ultimately not repaid when that business went under. And so this was a direct actual damage the plaintiff suffered as a result of the inability to obtain credit. The inability of the company. The inability of the company to— Because he figured they weren't going to be getting any credit, right? So he kept putting money into the business. Correct. Because the business, in part because of the blemish on his personal consumer credit report, was unable to obtain credit, he was forced then to lend the money to the business until the point that he decided the business was no longer viable and he was personally not repaid. Thank you. And I'm out of time. Thank you, Your Honors. Thank you. Thank you. Thank both counsel this morning. The case argued, Boydston v. The U.S. Bank is submitted.
judges: McKeown, Paez, Lasnik